Ronald C. PRIDDY, Sammy Bingham, and Douglas McGraw, Appellants,

v.

John V. RAWSON, Rick Stevens, E.M. (Liz) Stevens, Steve J. Schifani, and Richard Dickson, Appellees.

No. 14–07–00806–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 3, 2009.

Rehearing Overruled April 23, 2009.

Brad A. Guillory, Robert D. Clements, Jr., Alvin, for appellants.

Robert A. Axelrad, Houston, for appellees.

Panel consists of Justices YATES, SEYMORE, and BOYCE.

## OPINION

CHARLES SEYMORE, Justice.

Ronald C. Priddy ("Priddy"), Sammy Bingham ("Bingham"), and Douglas McGraw ("McGraw") (collectively "appellants") appeal the summary judgment granted in favor of appellees, John V. Rawson ("Rawson"), Rick Stevens, E.M. (Liz) Stevens, Steve J. Schifani ("Schifani"), and Richard Dickson ("Dickson"), on appellants' claims of fraud, breach of fiduciary duty, director liability for deed-restriction violations, and individually owed assessments. We affirm.

### I. BACKGROUND

Wolfe Airpark is a subdivision of homes and airplane hangars surrounding a small grass airstrip in Brazoria County. A portion of the subdivision is located in the City of Manvel. Frank Wolfe is the President of Wolfe Airpark, Inc., the subdivision's developer.

On January 28, 1981, Wolfe Airpark, Inc. filed a Declaration of Covenants, Conditions and Restrictions ("the Declaration") to govern the subdivision. This Declaration addresses, among other things, the owners' property rights, membership and voting rights, and maintenance assessments. Every owner of a lot subject to assessment is a member of the Wolfe Airpark Civic Club ("the Civic Club").[1] The Civic Club, a non-profit corporation, administers the common areas of the subdivision.[2] In addition to the restrictive covenants, the Civic Club and its Board of Directors are subject to the provisions of the Texas Non–Profit Corporation Act.[3] Priddy, McGraw, and Bingham were members of various boards during the events giving rise to the underlying suit. Schifani was elected to the Board in 1998, Rick and Liz Stevens were elected in 2001, and Rawson was elected in 2002.

The Declaration defines Wolfe Airpark, Inc., its successors, and assigns as the "Declarant."[4] The Declaration authorizes the Civic Club's Board of Directors to charge the Declarant up to ten percent (10%) of the annual assessment rate applicable to regular lot owners.[5] The Civic

---

1. Article III, Section 1.

2. Article I, Section 1 of the Declaration provides, in relevant part: " 'Civic Club' shall mean and refer to WOLFE AIRPARK CIVIC CLUB, INC., a Texas Non–Profit Corporation, and its successors. The Civic Club has title to and administers the common areas, and levies charges against the lot owners for common area expenses."

3. The Civic Club was incorporated in April 1998.

4. Article I, Section 6.

5. Article IV, Section 6 provides, in relevant part, as follows:

 As long as any lots are owned by the Declarant, the Board of Directors may charge and collect from [D]eclarant a fraction of

Club has two classes of voting membership: Class A members, which include all owners except the Declarant; and Class B member(s), consisting of the Declarant. Class A members have one (1) vote for each lot owned, and Class B members are entitled to three (3) votes for each lot owned.[6]

On February 22, 1991, Wolfe Airpark, Inc. conveyed one-hundred (100) undeveloped lots to Manvel Aviation, Inc. via warranty deed. The deed contained conveyancing language covering "the [ ] described premises, together with all and singular the rights and appurtenances thereto in anywise belonging" to Wolfe Airpark, Inc. Dickson is the President of Manvel Aviation.

In April 2003, the Civic Club sued appellants. In July 2003, appellants filed counterclaims against the Civic Club. The Civic Club and appellants filed cross-motions for partial summary judgment. In September 2003, the district court denied both the Civic Club's and appellants' motions for partial summary judgment.[7]

In May 2006, appellants filed their Sixth Amended Answer to the Civic Club's petition in which they also asserted claims against appellees as third-party defendants.[8] Specifically, appellants alleged (1) a failure to pay mandatory assessments, (2) fraud, (3) breach of fiduciary duty, and (4) director liability for deed restriction violations. Appellees moved for summary judgment on appellants' claims. On September 20, 2006, the trial court signed an order granting appellees' motion for summary judgment in its entirety.[9] On June 25, 2007, the trial signed an order severing appellants' claims against appellees from the remainder of the suit, thereby rendering the summary judgment in favor of appellees a final, appealable judgment. In this appeal, appellants challenge this summary judgment.

## II. STANDARD OF REVIEW

To be entitled to traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997); *Brown v. Hearthwood II Owners Ass'n*, 201 S.W.3d 153, 159 (Tex.App.-Houston [14th Dist] 2006, pet. denied). In reviewing a traditional summary judgment, we examine the entire record in the light most favorable to the non-movant, indulging every reasonable inference and resolving any doubts against the motion. *Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 782 (Tex.2007). When a trial court's order granting summary judgment does not specify the grounds upon which it was granted, we will affirm the judgment if any of the theories advanced in the motion are meritorious. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

---

the annual assessment of each such lot until the conveyance of said lot by Declarant to an Owner, provided that any such fractional charge to Declarant shall not exceed ten percent (10%) of the then current annual assessment.

6. Article III, Section 2.

7. The aforementioned pleadings and order are reflected in the civil docket sheet but do not form part of the record before us.

8. Scott Van Deusen, a former Civic Club board member, was also named as a third-party defendant. However, he is not a party to this appeal.

9. On this same day, the court also signed an order denying Appellants' Motion for Summary Judgment on Declarancy Status and Assessments.

A no-evidence motion for summary judgment must be granted if: (1) the moving party asserts that there is no evidence of one or more essential elements of a claim or defense on which the adverse party would have the burden of proof at trial, and (2) the respondent produces no summary judgment evidence raising a genuine issue of material fact on those elements. *See* Tex.R. Civ. P. 166a(i). In reviewing a no-evidence summary judgment, we apply the same standard, but consider only the evidence contrary to the motion. *See City of Keller v. Wilson,* 168 S.W.3d 802, 825 (Tex.2005). When the motion for summary judgment presents both no-evidence and traditional grounds, generally appellate courts review the no-evidence grounds first. *See Kalyanaram v. Univ. of Tex. Sys.,* 230 S.W.3d 921, 925 (Tex.App.-Dallas 2007, pet. denied) (reviewing propriety of summary judgment under no-evidence standards of rule 166a(i) where motion presented both no-evidence and traditional grounds) (citing *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex.2004)).

## III. ANALYSIS

There are three related arguments concerning the interpretation of the restrictive covenants at issue in this case: (1) whether Manvel assumed the status of Declarant upon conveyance of the 100 undeveloped lots; (2) whether Manvel owes assessments; and (3) whether Manvel was entitled to vote at the Civic Club's annual board elections. Appellants posit that Manvel did not become the Declarant upon conveyance of the undeveloped lots. Thus, appellants argue Manvel should have been assessed at a higher rate and, having failed to pay the higher assessment amount, Manvel's voting rights were suspended. Because many of the issues in the brief do not bear on what is dispositive of the appeal, we will confine our discussion to those issues germane to our disposition. *See* TEX.R.APP. P. 47.1 (requiring court of appeals's opinion to be as brief as practicable but to address every issue raised that is necessary to final disposition).

As a preliminary matter, we note that, although appellants frame their arguments as two issues, in both instances, they complain that the trial court erred in granting summary judgment on their claims. Accordingly, we address the issues together as they relate to appellants' claims.

In their Sixth Amended Answer and Counterclaim, appellants alleged claims of fraud and breach of fiduciary duty against all of the appellees. Against Rawson, Schifani, Rick Stevens, and Liz Stevens (collectively "the appellee directors"), appellants also asserted a claim for director liability for deed restriction violations. Against Dickson, individually, and Rawson, individually, appellants alleged a failure to pay mandatory monthly assessments. In their summary-judgment motion, appellees asserted no-evidence as well as traditional summary-judgment grounds. First, they argued that the appellee directors were protected under the Texas Non–Profit Corporation Act and that appellants failed to present any evidence of the three elements necessary to impose liability upon them. Appellees also contended that there was no evidence of at least one of the elements of appellants' claims of (1) fraud, (2) breach of fiduciary duty, (3) director liability for deed restriction violations, and (4) assessments owed individually by Dickson and Rawson. Appellees also sought a traditional summary judgment on (1) estoppel grounds, and (2) the issue of assessments with regard to Rawson, individually. We begin by reviewing the no-evidence grounds presented. *See Ridgway,* 135 S.W.3d at 600.

## A. The Appellee Directors—Rawson, Schifani, Rick Stevens, and Liz Stevens

### 1. Texas Non–Profit Corporation Act

Appellants contend the trial court erred in granting a no-evidence summary judgment to the appellee directors based on the statutory protection afforded by the Texas Non–Profit Corporation Act ("the Act"). *See* Tex.Rev.Civ. Stat. Ann. art. 1396–1.01–11.01 (Vernon 2003 & Supp. 2008). Appellants argue that the "safe harbor" provided by the Act is in the nature of an affirmative defense and, as such, could not be raised by appellees in a no-evidence motion. Appellants conclude that, in any case, appellees, not appellants, bore the burden of proof and that they failed to satisfy their burden.

In appellees' motion for summary judgment, Schifani, Rawson, Rick Stevens, and Liz Stevens asserted that, as Civic Club board members, they were entitled to certain statutory protections provided by the Act, namely, those under its "safe harbor" provision. *See id.* art. 1396–2.28. They contend that appellants failed to present any evidence of the three elements in the provision necessary to impose liability upon them and, thus, they were entitled to judgment as a matter of law.

The Act provides, in relevant part:

A director is not liable to the corporation, any member, or any other person for any action taken or not taken as a director if the director acted in compliance with this article. A person seeking to establish liability of a director must prove that the director has not acted:

(1) in good faith;

(2) with ordinary care; and

(3) in a manner the director reasonably believes to be in the best interest of the corporation.

*Id.*

### a. Burden of Proof

 We first consider which party bore the burden of proof under the Act's safe harbor provision. Appellants argue that the Act's safe harbor is an affirmative defense that could not be raised in a no-evidence summary judgment motion. In support of their argument, they rely on *Nowak v. DAS Investment Corp.*, 110 S.W.3d 677 (Tex.App.-Houston [14th Dist.] 2003, no pet.), in which we held that "a party may never properly move for no-evidence summary judgment to prevail on its own claim or affirmative defense for which it has the burden of proof." *Id.* at 679. Appellants' reliance is misplaced. Although appellants are correct that a party may not move for a no-evidence summary judgment to prevail on an affirmative defense, we disagree that the safe harbor provision is an affirmative defense. The provision is not among the affirmative defenses enumerated in Texas Rule of Civil Procedure 94. *See* Tex.R. Civ. P. 94. Further, while the list of affirmative defenses in Rule 94 is not exclusive,[10] we are unaware of any authority for the proposition that the Act's safe harbor provision is an affirmative defense, and appellants do not direct us to any. To the contrary, the statutory language makes clear that the party seeking to impose liability on a director bears the burden of proof. *See* Tex.Rev.Civ. Stat. Ann. Art. 1396–2.28D ("A person seeking to establish liability of a director **must prove** ....") (emphasis added).[11] Thus, it was incumbent upon

---

**10.** *See* Robert W. Stayton, *The Dallas Bar Speaks, 1941*, General Commentary to Tex.R. Civ. P. 94 ("[T]he extensive list of illustrative affirmative defenses is borrowed from the Federal rules, but it is not exclusive.")

**11.** *But cf.* Tex. Tax Code Ann. § 171.255(c) (Vernon 2008) (safe harbor provision providing exception to liability of director or officer for debts of corporation which has forfeited its corporate privileges). This safe harbor provision states that "[a] director or officer is not liable for a debt of the corporation *if the*

appellants to come forward with competent summary judgment evidence showing that Schifani, Rawson, Rick Stevens, and Liz Stevens did not act (1) in good faith, (2) with ordinary care, and (3) in a manner they reasonably believed to be in the best interest of the corporation.

### b. Summary–Judgment Evidence

■ In their summary-judgment response, under the section entitled "Response to Individual Issues," appellants argued that the appellee directors may not invoke the protection of the safe harbor provision because they "not only violated their fiduciary duties but committed (per Charles Kinsey) land 'theft' ... [and] intentionally participated, at one time or another, in a series of illegal actions designed to enrich themselves at the expense of the membership." This assertion is the sum total of appellants' discussion of the safe harbor provision. They do not identify which fiduciary duties the appellee directors allegedly violated,[12] or in which self-enriching illegal actions they allegedly participated, which would deny them protection under the Act's safe harbor provision.[13] Moreover, there is no citation to any evidence nor to any legal authority to support their position. As an appellate court, it is not our duty to perform an independent review of the summary judgment record for evidence supporting appellants' position. See King v. Wells Fargo Bank, N.A., 205 S.W.3d 731, 735 (Tex. App.-Dallas 2006, no pet.).[14]

■ In the "Argument" section of their Brief, appellants address the safe harbor

---

officer or director shows that the debt was created or incurred: (1) over the director's objection; or (2) without the director's knowledge and that the exercise of reasonable diligence to become acquainted with the affairs of the corporation would not have revealed the intention to create the debt." Id. (emphasis added). The unambiguous language of this Tax Code provision makes clear that the director or officer of a corporation seeking to escape personal liability has the burden to prove he objected to or did not consent to the debt. See In re Trammell, 246 S.W.3d 815, 822 (Tex.App.-Dallas 2008, no pet.); PACCAR Fin. Corp. v. Potter, 239 S.W.3d 879, 884 (Tex.App.-Dallas 2007, no pet.); Williams v. Adams, 74 S.W.3d 437, 442 (Tex.App.-Corpus Christi 2002, pet. denied). In contrast, the language of the safe harbor provision at issue here clearly places the burden of proof upon the person seeking to impose liability upon a director.

12. Notwithstanding, it is unclear whether they would owe a duty to the individual appellants in the first place, as opposed to the Civic Club. See, e.g., Hoggett v. Brown, 971 S.W.2d 472, 488 (Tex.App.-Houston [14th Dist.] 1997, writ denied) (noting director's fiduciary duty runs only to corporation, not to individual shareholders).

13. Appellants' allegation of land theft appears to stem from the deposition testimony of attorney Charles Kinsey. When asked about a cash warranty deed granting a lot in the subdivision to him, Kinsey testified as follows:

Q: Okay. Now, the Wolfe Airpark, Inc. that is referred to in the Cash Warranty Deed dated May 19, 1998 is actually not the Wolfe Airpark, Inc. that owned the land?
A: That's correct.
Q: So what's that about?
A: Well, I mean, I've owned the lot for years and years. I had—I just went ahead and did a deed to myself.
Q: The—
A: And eventually under the statute of limitations, I'll become a land thief.
Q: Say again.
A: After 10 years, it won't make any difference anyway, will it?
Q: You mean under adverse possession?
A: Sure.

Appellants' allegation of land theft does not acknowledge the portion of Kinsey's testimony that he had "owned the lot for years and years." Notwithstanding, it is unclear how Kinsey's actions would be attributable to the appellee directors.

14. We also note that appellants make no mention of the third element of the statutory safe harbor in either their Response or Brief.

issue in nearly the same manner, referring to evidence of a fraudulent land deal, violations of fiduciary duties, and a series of self-enriching illegal actions. This is the sole discussion of the issue of the statutory safe harbor: there is no further analysis or any citation to the record or legal authority. Thus, even if appellants had presented sufficient evidence to the trial court to survive summary judgment, they have failed to adequately brief this issue on appeal and, in doing so, waived error. *See* Tex.R.App. P. 38.1(h) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Howeth Invests., Inc. v. City of Hedwig Village,* 259 S.W.3d 877, 902 (Tex.App.-Houston [1st Dist.] 2008, pet. denied) (finding appellant's argument, which consisted of one paragraph with no citation to legal authority, as inadequately briefed and refusing to consider it); *Lundy v. Masson,* 260 S.W.3d 482, 503 (Tex.App.-Houston [14th Dist.] 2008, pet. denied) (concluding that appellant failed to provide argument or cite authority for contention on appeal and appellate court was "not required to do the job of the advocate").

■ Moreover, the evidence in the record supports the appellee directors' contention that they acted in good faith, with ordinary care, and in a manner they reasonable believed to be in the best interest of the corporation in carrying out their duties. The Act defines "ordinary care" as "the care that an ordinarily prudent person in a similar position would exercise under similar circumstances." Tex.Rev. Civ. Stat. Ann. art. 1396–1.02(15). The Act

also provides that "[ ]in the discharge of any duty imposed … the director may in good faith rely on information, opinions, reports, or statements … that were prepared or presented by: (1) one of more officers or employees of the corporation." *Id.* art. 1396–2.28(B)(1).

As noted above, one of the primary disputes between the parties is whether Manvel Aviation owes assessments to the Civic Club.[15] Regarding the issue of assessments, our review of the record reflects that the appellee directors acted similarly to previous board members. Beginning in 1991, the Civic Club boards, including those on which Priddy and McGraw served, never assessed Manvel Aviation's lots higher than 10% of the rate applicable to a regular owner's lot. Priddy admitted as much in his deposition.[16] In 1994, while on the Board, Priddy moved to adopt a report from the Treasurer regarding owners who were more than two years delinquent on their assessments. The report did not list Manvel Aviation among them. According to a 1995 Civic Club board agenda, the Board planned to file liens against owners with past due assessments. However, no lien was ever filed against Manvel Aviation. In 1997, Priddy prepared a spreadsheet at the top of which read "Each Lot Owned Pays $108 Yearly Except Dickson's." There is no entry for Manvel Aviation. The spreadsheet also contains a column for "[19]95 and Earlier Due," and the entries pertaining to Manvel Aviation's lots reflect a zero balance owing for 1995 and earlier. In 1998, upon becoming Board Treasurer, Schifani took possession of the Civic Club's financial

---

15. In light of our conclusion regarding application of the safe harbor provision to the appellee directors, we do not reach this question.

16. When asked in his deposition why Manvel Aviation had been assessed at the 10% rate,

Priddy denied that it was because he considered Manvel Aviation to be the Declarant. Instead, he testified that he arbitrarily picked that amount because he thought Dickson might pay it.

books and records from Priddy and relied on them in making assessments on behalf of the Civic Club. These documents include account ledger cards that contain a lot owner's contact information as well as information regarding the amount assessed by and paid to the Civic Club. The ledger cards reflect that Priddy made "@10%" entries regarding Manvel Aviation's lots.

Thus, the evidence supports the appellee directors' position that, by assessing Manvel Aviation's lots at a reduced rate, they were adhering to the practices of prior boards—including those on which Priddy and McGraw served—in assessing Manvel Aviation's lots. *See id.* art. 1396–1.02(15) (defining ordinary care as "the care that an ordinarily prudent person in a similar position would exercise under similar circumstances.")[17] The appellee directors were entitled in good faith to rely on the information prepared by previous boards in making those assessments. *See id.* art. 1396–2.28(B)(1).

**c. Waiver**

In their Reply Brief, appellants contend that the issue of whether Manvel is the Declarant under the deed must first be resolved before the trial court may consider application of the statutory safe harbor. They reason this contention is true because resolution of the declarancy issue will be determinative of whether Manvel is delinquent in its assessments, and whether it was entitled to vote in the Civic Club

board elections when the appellee directors were elected.

■ Appellants, however, have failed to preserve their argument for review. Their summary judgment response to appellees' safe harbor argument consisted of two paragraphs which did not include an assertion that the declarancy issue must be resolved before considering the application of the safe harbor provision. Because appellants did not expressly present this argument to the trial court, they have waived this complaint. *See* Tex.R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); Tex. R.App. P. 33.1 (as prerequisite for presenting a complaint for appellate review, record must show complaint was made to trial court by timely request, objection, or motion). Further, appellants did not make this argument in their original appellate brief. The Texas Rules of Appellate Procedure do not allow an appellant to include in a reply brief a new issue not raised in the appellant's original brief. *See* Tex. R.App. P. 38.3; *Swaab v. Swaab*, 282 S.W.3d 519, 527, n. 10, 2008 WL 1838023, at *13 n. 10 (Tex.App.-Houston [14th Dist.] Apr. 24, 2008, no pet.) (noting issue raised for first time in appellate reply brief will not be considered on appeal).[18] Thus, appellants have waived this argument.

---

**17.** In their Reply Brief, appellants argue that appellees' claim that appellants treated Manvel as the Declarant is "smoke and mirrors." They then conclude that "course of conduct" is not recognized as a exception to the Statute of Frauds or the Texas Recording Statute. Appellants offer no further analysis nor do they cite any legal authority to support their position. This argument is inadequately briefed and will not be considered. *See* Tex. R.App. P. 38.1(h) ("The brief must contain a clear and concise argument for the contention made, with appropriate citations to authori-

ties and to the record."). Further, appellants did not raise this issue in their summary-judgment response. *See* Tex.R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").

**18.** Notwithstanding, the parties' dispute regarding Manvel's status does not vitiate appellants' burden to come forward with competent summary judgment evidence to raise a

In sum, appellants did not carry their burden of adducing summary-judgment evidence raising a fact issue with respect to the elements of the statutory safe harbor. Further, by failing to adequately address the issue in their brief, they have also waived their complaint on appeal. We conclude the trial court properly granted summary judgment in favor of Rawson, Schifani, Rick Stevens, and Liz Stevens on appellants' claims of fraud, breach of fiduciary duty, and director liability for deed restriction violations, based on the safe harbor provision of the Texas Non–Profit Corporation Act.[19]

### B. Dickson

#### 1. Fraud

Appellants asserted a claim for fraud against all appellees in their pleadings. The trial court granted summary judgment in favor of appellees. We address appellants' fraud claim as it pertains to Dickson.

 To recover on an action for fraud, a party must prove that (1) a material representation was made; (2) the representation was false; (3) when the speaker made the representation, he knew it was false or made it recklessly without knowledge of the truth and as a positive assertion; (4) the speaker made it with the intention that it should be acted upon by the party; (5) the party acted in reliance upon it; and (6) the party thereby suffered injury. *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 758 (Tex.2001) (orig.proceeding); *Lundy,* 260 S.W.3d at 492. Fraud is never presumed, and when it is alleged, the facts sustaining it must be clearly

shown. *See Stephanz v. Laird,* 846 S.W.2d 895, 903 (Tex.App.-Houston [1st Dist.] 1993, writ denied).

 In their Motion and Brief, appellees argue there is no evidence Dickson knowingly made false representations, that appellants relied upon any such misrepresentation, or that appellants suffered any damages. In the "Response to Individual Issues" section of their summary-judgment response, appellants do not address fraud. Instead, the only reference to any alleged fraud by Dickson appears under the section addressing breach of fiduciary duty in which appellants contend that "Dickson is not only 'knee deep' in the activity … he is the ring leader, architect of the fraud, and primary recipient of the land, funds, and benefits looted from the Civic Club." Appellants do not identify any alleged misrepresentations by Dickson. Further, appellants do not present any evidence raising a fact issue with regard to the fraud elements of reliance or damages. As previously noted, we are not bound to perform an independent review of the summary judgment record for evidence supporting appellants' position. *See King,* 205 S.W.3d at 735.

In the "Argument" portion of their Brief, under the section entitled "Breach of Fiduciary Duty and Fraud," appellants assert that, once a fiduciary relationship is established, a presumption arises that transactions between corporate fiduciaries and their corporations are unfair. From this principle, appellants then reason that "[s]ince the presumption of fraud exists in this case, the Movants were required to conclusively negate that presumption."

genuine issue of material fact on the elements of the statutory safe harbor.

**19.** In their Reply Brief, appellants also assert that Dickson cannot avail himself of the protection of the statutory safe harbor because he

is not a member of the Board of Directors. We need not address this argument because only Rawson, Schifani, Rick Stevens, and Liz Stevens sought summary judgment on this ground.

This is appellants' entire argument in support of their fraud claim. Appellants do not cite any authority to support their contention that a presumption of unfairness translates into one of fraud, nor are we aware of any. Moreover, this assertion would presumably apply only to the appellee directors, not Dickson, who was not a board member. Appellants' argument is inadequately briefed. *See* Tex.R.App. P. 38.1(h) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *Howeth*, 259 S.W.3d at 902 (finding appellant's argument, which consisted of one paragraph with no citation to legal authority, inadequately briefed); *Lundy*, 260 S.W.3d at 503.[20]

In summary, appellants produced no summary-judgment evidence raising a genuine issue of material fact regarding the elements of misrepresentation, reliance, or damages in their fraud claim against Dickson. Further, their challenge on appeal lacks any analysis or citation to legal authority and, as such, is insufficient to preserve error. We conclude the trial court properly granted summary judgment in favor of Dickson on appellants' fraud claim.

### 2. Breach of Fiduciary Duty

In their pleadings, appellants alleged that appellees engaged in a fraudulent pattern of conduct designed to use Wolfe Airpark property and funds for their own private enrichment. The trial court granted summary judgment in favor of appellees on appellants' breach of fiduciary claim. We address appellants' claim as it relates to Dickson.

To prevail on a breach of fiduciary duty claim, a plaintiff must show (1) a fiduciary relationship between the plaintiff and the defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach. *See Lundy*, 260 S.W.3d at 501; *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex.App.-Dallas 2006, pet. denied); *Punts v. Wilson*, 137 S.W.3d 889, 891 (Tex.App.-Texarkana 2004, no pet.). A fiduciary relationship may arise from formal and informal relationships and may be created by contract. *Lundy*, 260 S.W.3d at 501; *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 698 (Tex.App.-Fort Worth 2006, pet. denied). Fiduciary duties arise as a matter of law in certain formal relationships, including attorney-client and trustee relationships. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex.2005). In contrast, an informal fiduciary duty may arise from a moral, social, domestic, or purely personal relationship of trust and confidence. *Id.; Cotten*, 187 S.W.3d at 698. To impose an informal fiduciary duty, the relationship of trust and confidence must exist prior to, and apart from, the agreement that is the basis of the suit. *Cotten*, 187 S.W.3d at 698.

In their Motion and Brief, appellees argue there is no evidence showing that Dickson owed a fiduciary duty to appellants. In their summary-judgment response, appellants perfunctorily conclude

---

20. In the fact section of their Brief, appellants allege that Dickson paid hundreds of dollars for the private individual legal fees of the appellee directors. Appellants further contend that Dickson personally paid money to the Civic Club attorneys so that they would sue appellants because they had opposed the appellee directors in board elections. As evidence of these payments, appellants refer to two checks written by Dickson to Novelli, Harvie, and Huzinac, P.C. However, appellants do not make any attempt to tie these alleged facts to the elements of fraud challenged by appellees. Moreover, it is unclear how Dickson's payment of attorneys' fees is, in and of itself, evidence of wrongdoing.

that Dickson—in concert with the appellee directors—violated his fiduciary duties to appellants but entirely fail to address appellees' contention that no such duty exists. Indeed, the record does not reflect—nor do appellants contend—that Dickson was ever a board member, and we find no evidence otherwise demonstrating the existence of a formal relationship upon which to base a fiduciary duty. Further, we find no evidence—nor do appellants direct us to any evidence—establishing a relationship of trust and confidence between appellants and Dickson giving rise to an informal fiduciary duty.[21] Similarly, in their Brief, appellants argue only that directors and officers of a corporation owe a fiduciary obligation to their corporation but do not explain why Dickson, who is not a board member, would owe such a duty. Thus, appellants have waived this argument on appeal. *See* Tex.R.App. P. 38.1(h).

Appellants failed to present competent summary judgment evidence raising a genuine issue of material fact as to whether Dickson owed them a fiduciary duty. Further, in their Brief, appellants fail to address the existence of a fiduciary duty. Consequently, error, if any, is waived. We conclude the trial court properly granted summary judgment on appellant's breach-of-fiduciary-duty claim against Dickson.

### 3. Assessments

In their pleadings, appellants alleged that Dickson and/or Manvel failed to pay monthly assessments on the lots owned in an amount in excess of $300,000. They contend Dickson is personally liable for the unpaid assessments because he disregarded the corporate formalities of Manvel Aviation and treated the corporation as his alter ego. The trial court granted summary judgment in favor of Dickson on this claim.

The Texas Business Corporation Act provides that an owner of a corporation is not liable for contractual obligations of the corporation under an alter ego theory unless the plaintiff demonstrates that the owner "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the ... owner." Tex. Bus. Corp. Act Ann. art. 2.21(A)(2) (Vernon 2003).[22] The alter ego doctrine applies "when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 387 (Tex.App.-Houston [14th Dist.] 2007, no pet.). Actual fraud involves dishonesty of purpose or intent to deceive. *Id.*

In their Response and Brief, appellants allege the following in support of their

---

21. When asked in his deposition to explain the basis for his claim that Dickson owed him a fiduciary duty, Priddy testified as follows:

Q: Do you claim that Richard Dickson owed fiduciary duties to you?
A: Absolutely.
Q: What's the basis of that claim?
A: He controls the Board of Directors, who controls the Civic Club and my life.
Q: What fiduciary duty does Richard Dickson owe to you?

A: Moral and ethical responsibility not to influence the Board of Directors illegally as he has done.

Appellants, however, offer no evidence whatsoever demonstrating the existence of a relationship of trust and confidence that would give rise to such a moral responsibility.

22. This article is now re-codified in sections 21.223–.226 of the Texas Business Organizations Code, Act of May 13, 2003, 78th Leg., R.S., ch. 182, § 1, 2003 Tex. Gen. Laws 267, 427–28.

contention that Dickson is the alter ego of Manvel Aviation:

- Schifani testified that he never billed Manvel Aviation and that he dealt with Dickson.
- From 1992 to 2003, all Civic Club account cards were in Dickson's name, not Manvel Aviation's.
- Dickson, individually, bought an airport hangar in 1990 with Kinsey, Vic Sturm, and David Cooper (acquiring 100% ownership in 1994), then wrote off the expense from Manvel Aviation's corporate tax returns.
- Civic Club's General Meeting Minutes dated January 22, 1994 state "Rumor: Richard Dickson is now sole owner of unsold hangar lots."
- Minutes from April 4, 1998 meeting with Schifani, David Eldridge, and Dickson state "R.D. claims about 100 lots ... R.D. to furnish tax receipts to verify."
- On January 23, 2003, Dickson signed a proxy for land in his individual name.
- In a letter to Schifani dated March 23, 1998, Dickson wrote, "I received from Frank Wolfe, and still own, the following lots ... I have always paid for mowing my lots myself."
- In an e-mail to Schifani dated January 7, 2002, Rick Norris wrote, "I just returned from the lawyers ... Richard Dickson ownes [sic] Wolfe Airpark, Inc. which intitles [sic] him [to] the status of 'Declarant.'"
- In an e-mail to Schifani dated January 28, 2002, Gail Steele, a property owner, inquired whether Dickson was current on his assessments.

Having examined the evidence in the light most favorable to the non-movant, we conclude that the above-cited evidence constitutes more than a scintilla of probative evidence raising a question of material fact as to whether Dickson is the alter ego of Manvel Aviation. *See McInnis v. Mallia,* 261 S.W.3d 197, 202 (Tex.App.-Houston [14th Dist.] 2008, no pet.).

 This conclusion, however, does not end our inquiry. To establish Dickson's personal liability for any outstanding assessments, appellants were required to present competent summary judgment evidence showing that he perpetrated an actual fraud primarily for his personal benefit. *See* Tex. Bus. Corp. Act Ann. art. 2.21(A)(2). However, in both their Response and Brief, appellants focus solely on whether Dickson is the alter ego of Manvel Aviation, concluding in their Brief that "[i]f Manvel Aviation, Inc. is the 'alter ego' of Richard Dickson, then Dickson is personally liable for the assessments to Wolfe Airpark." Appellants do not allege that Dickson committed an actual fraud for his own personal benefit nor do they cite to any legal authority in support of such a claim. Thus, they have waived any error regarding this argument on appeal. *See* Tex.R.App. P. 38.1(h). In the absence of any evidence of actual fraud by Dickson for his own benefit, we conclude the trial court properly granted summary judgment on appellants' claim that Dickson is personally liable for any unpaid assessments based on an alter ego theory.[23]

## IV. Conclusion

We overrule appellants' two issues and affirm the trial court's judgment.

**23.** In their Brief, appellants do not complain about the summary judgment denying their claim that Rawson owed assessments, individually. By failing to present this ground in an issue or argument on appeal, appellants have waived any error with regard to this contention. *See Jacobs v. Satterwhite,* 65 S.W.3d 653, 655 (Tex.2001).