Dismissed in Part, Affirmed in Part, and Memorandum Opinion filed January 26, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-00648-CV



Boss Hoss
Cycles of Houston, L.L.C.
and David chesshir, Appellants 

v.

Wells Fargo
Bank, N.A., Appellee 



On Appeal from
the County Civil Court at Law No. 1

Harris County, Texas

Trial Court
Cause No. 900523



 

MEMORANDUM OPINION 

In this contract dispute, a jury determined that a
motorcycle dealer breached the terms of its agreement with a bank.  In three
issues, the motorcycle dealer appeals the jury’s verdict in favor of the bank
on the grounds that the bank failed to prove that the dealer breached its
agreement with the bank, the dealer perfected the bank’s security interest in
the motorcycle at issue, and even if the dealer did not perfect the bank’s
security interest in the motorcycle, the dealer was excused from doing so as a matter
of law.  In addition, the motorcycle dealer asks that we remand the case to
enable it to recover attorneys’ fees.  Because we conclude that sufficient
evidence supports the jury’s findings, we affirm the trial court’s judgment.

I. 
Factual and Procedural Background

In July 2003, appellant Boss Hoss Cycles of Houston,
L.L.C. (“Boss Hoss”) and appellee Wells Fargo Bank, N.A. (“Wells Fargo”)
entered into an agreement (the “Dealer Agreement’) in which Boss Hoss, as a
motorcycle dealer, assigned installment contracts from the sale of motorcycles
to Wells Fargo.  Under the terms of the agreement, Boss Hoss warranted, among
other things, that as of the assignment of the installment contracts to Wells
Fargo, 

as a result of [Boss Hoss] making application for same, a
Certificate of Title, or comparable evidence of the perfection of [Wells
Fargo]’s lien on the property as collateral for the [c]ontract will be issued
by the lawful issuing agency of the state in which the property is sold within
90 days of the date on which the [c]ontract was signed by the purchaser, on
which the “Lienholder,” “Legal Owner,” or other such terminology reflecting
collateral ownership with regard to the property is identified as [Wells
Fargo.]

Boss Hoss further agreed to
undertake actions requested by Wells Fargo to

evidence and perfect [the Dealer Agreement], [Wells
Fargo]’s ownership interest in a [c]ontract and its proceeds, [Wells Fargo]’s
ownership or security interest in the related property financed and any
[related rights.]

Finally, Boss Hoss agreed to
repurchase any contract or any of Wells Fargo’s ownership or security interest
in the financed property if Wells Fargo determined that Boss Hoss “breached any
warranty, covenant or other duty to [Wells Fargo] arising” under the Dealer
Agreement.  The repurchase price would be the amount of the unpaid installment
contract, including any premiums or other amounts due under the installment
contract.  Boss Hoss’s president and owner, David Chesshir, executed the
agreement.

            In August 2006,
Boss Hoss sold a motorcycle to Ronald Elic at a motorcycle rally in Sturgis,
South Dakota.  Elic executed a retail-installment contract for the purchase of
the motorcycle at the time of the sale.  Under the contract, Elic agreed to
make 84 monthly payments, beginning September 9, 2006, and ending August 9,
2013. Wells Fargo approved Elic for financing and the contract was assigned to
the bank.  On August 10, 2006, Chesshir wrote a letter on behalf of Boss Hoss
(the “Guarantee Letter”) to Wells Fargo, stating:

This letter will service [sic] as a guarantee of title on RONALD
P. ELIC that Boss Hoss Cycles of Houston will forward to WELLS FARGO
BANK, N.A. all title papers on 2006 BOSS HOSS 502 BIKE, VIN NO:
1B96BC446D285250 upon receipt of MSO[[1]]
and check in the amount of $35,300.00.

If Wells Fargo has not received the perfected title showing
Wells Fargo as the lien holder within 90 days, Wells Fargo may require the
Dealership, (Boss Hoss Cycles of Houston), to repurchase the loan.

Wells Fargo paid Boss Hoss
$35,300.00 for the assignment of the Elic contract.  In September, Boss Hoss
endorsed the reverse-side of the MSO, notating Wells Fargo as a lienholder, and
sent it to Elic.  Elic did not apply for a title on the motorcycle, and Wells
Fargo did not receive a perfected title showing it as a lienholder within 90
days of the date of the Guarantee Letter.

            Elic defaulted on
the installment contract, and in May 2007, Wells Fargo notified Boss Hoss in
writing that Wells Fargo had never obtained a “perfected lien interest” on the
loan.  Wells Fargo stated that under the terms of the Dealer Agreement and the
Guarantee Letter, Boss Hoss was required to repurchase the loan and that the
payoff amount of the Elic contract was $32,705.54.  Boss Hoss did not provide the
funds to Wells Fargo, and Wells Fargo filed suit against Boss Hoss and Chesshir
for breach of contract and conversion.[2]

            Before trial, the
trial court granted partial summary judgment, concluding that (a) Missouri law
governed the perfection of Wells Fargo’s security interest in the motorcycle
purchased by Elic, (b) a security interest under Missouri law can only be
perfected by delivery of a notice of lien to the Missouri director of revenue,
and (c) Boss Hoss did not perfect Wells Fargo’s security interest in the
motorcycle.  The case proceeded to a jury trial.

            At trial,
Chesshir testified that, pursuant to the Dealer Agreement, Boss Hoss agreed to
take “such action as necessary” or as Wells Fargo requested to perfect its
security interest.  He also agreed that Boss Hoss warranted it would repurchase
any installment contract if Boss Hoss breached any warranty or duty arising out
of the Dealer Agreement.  He admitted that he sent the Guarantee Letter to
Wells Fargo, and that Boss Hoss received the $35,300 from Wells Fargo.  In
addition, the following colloquy occurred between Chesshir and the attorney
representing Wells Fargo:

Q.:       You
promised Wells Fargo Bank, as the owner of Boss Hoss, that if they paid you
$35,300, you would guarantee that Wells Fargo would get a perfected title;
isn’t that correct?

A.:       I don’t know how to answer that.

Q.:       You need to answer yes or no, Mr. Chesshir.

A.:       Yes.

Chesshir also explained that
Wells Fargo approved the loan to Elic.  He testified that “title work” was
provided to Wells Fargo in the form of a copy of the front side of the MSO. 
Accoding to Chesshir, an MSO is a form of a title, but not a certificate of
title.  He stated that other out-of-state sales had been handled in a similar
manner with Wells Fargo without any problems.  Chesshir explained that he took
several actions to protect Wells Fargo’s security interest:  (1) he filled out
the back side of the MSO with Wells Fargo listed as the lienholder and sent it
to Elic; (2) he called Elic numerous times when Wells Fargo notified him that
Elic had not titled the vehicle; (3) he provided Wells Fargo with Elic’s
contact information and insurance information when Wells Fargo notified him
that Elic had missed payments; (4) he suggested that Wells Fargo inform Elic’s
motorcycle insurance provider that Elic had failed to title the motorcycle; and
(5) he offered to pick up the motorcycle if Wells Fargo decided to repossess
it.  Chesshir further admitted that Boss Hoss provided no evidence of a
perfected lien to Wells Fargo for this particular transaction and that, without
an MSO, a party cannot get a certificate of title.  According to Chesshir,
Wells Fargo decided not to repossess the motorcycle, and shortly after sending
him a demand letter regarding repurchasing the Elic contract, Wells Fargo
notified him that it would no longer be financing motorcycles.  Chesshir also
stated that he believed the Dealer Agreement only applied to transactions
occurring in Texas, and that the only reason Boss Hoss had not gotten the
motorcycle titled in Missouri for Wells Fargo was that it would be illegal for
it to do so. 

Mary Walker, a representative of Wells Fargo,
testified that the Elic loan was in default.  When questioned about
repossessing the motorcycle, she stated that Wells Fargo could not repossess
the motorcycle without a perfected title.  She admitted that she was unaware
that, under Missouri law, Wells Fargo could have notified the Missouri director
of revenue of its lien on the motorcycle to perfect its security interest. 
Finally, both attorneys for Wells Fargo and Boss Hoss testified regarding
reasonable attorneys’ fees for handling this dispute.

The trial court charged the jury, and the jury
unanimously determined that Boss Hoss failed to comply with its “Agreement”
with Wells Fargo, and that its failure to comply was not excused.  The jury
found (a) $32,705.54 in damages for Boss Hoss’s failure to comply with the agreement
and (b) $15,522.94 to be reasonable attorneys’ fees for prosecution of Wells
Fargo’s claims through trial.[3] 
Boss Hoss and Chesshir filed a motion for judgment notwithstanding the verdict,
contending that the evidence conclusively established that it perfected Wells
Fargo’s security interest and, if it did not, its failure to do so was excused
as a matter of law.  After denying Boss Hoss’s and Chesshir’s motion for
judgment notwithstanding the verdict, the trial court entered judgment against
them.  Boss Hoss and Chesshir filed a motion for new trial, which was overruled
by operation of law, and this appeal timely ensued. 

II. 
Issues Presented

In its first issue, Boss Hoss asserts that Wells
Fargo did not prove that Boss Hoss breached the Dealer Agreement.  Boss Hoss
contends that it perfected Wells Fargo’s security interest in its second
issue.  In issue three, Boss Hoss argues that, if it did not perfect Wells
Fargo’s security interest, its failure to do so was excused as a matter of
law.  Finally, Boss Hoss asks that the case be remanded so that it can recover
attorneys’ fees in issue four.

III. 
Analysis

A.        Dismissal of
Chesshir’s Appeal

            The pleadings,
judgment, and notice of appeal filed in the trial court all reference both Boss
Hoss and Chesshir as parties.  But the appellate brief filed by Boss Hoss in
this court lists only Boss Hoss as a party; Chesshir is not included as a
party.  On September 9, 2009, this court notified the parties that we would
consider dismissal of Chesshir’s appeal for want of prosecution if no party
filed a response on or before September 21, 2009, showing meritorious grounds
for continuing the appeal.  This letter additionally advised Chesshir that he
could join Boss Hoss’s brief.  No response was filed to this letter.  Thus, we
order Chesshir’s appeal dismissed for want of prosecution.

B.        Perfection of
Security Interest

Boss Hoss’s second and third issues specifically
concern whether it perfected Wells Fargo’s security interest in the
motorcycle.  These issues appear to be challenges to the trial court’s
pre-trial partial summary judgment that Missouri law applies to this dispute
and that Boss Hoss failed to perfect Wells Fargo’s security interest in the
motorcycle under Missouri law.  But Boss Hoss provides no argument or authority
regarding a choice-of-law issue.  Thus, to the extent that these challenges
relate to the trial court’s choice-of-law determinations, they are inadequately
briefed and are waived.  See Tex.
R. App. P. 38.1(i) (“The brief must contain a clear and concise argument
for the contentions made, with appropriate citations to authorities and to the
record.”); see also Priddy v. Rawson, 282 S.W.3d 588, 595 (Tex.
App.—Houston [14th Dist.] 2009, pet. denied) (stating that it is not the duty
of an appellate court to perform an independent review of the summary-judgment
record for evidence supporting an appellant’s position). 

Further, the questions presented to the jury did not
concern whether Boss Hoss perfected Wells Fargo’s security interest in the
motorcycle subject to the retail- installment contract.  Instead, the questions
the jury was asked concerned whether Boss Hoss failed to comply with its
agreement with Wells Fargo and whether this failure, if any, was excused. 
Neither the Dealer Agreement nor the Guarantee Letter required Boss Hoss to
perfect Wells Fargo’s security interest; instead, both required Boss Hoss to
provide evidence to Wells Fargo that the security interest was perfected. 
Thus, rather than considering whether Boss Hoss “perfected” Wells Fargo’s
security interest in the motorcycle, we confine our review to the issues
actually before the jury:  whether Boss Hoss breached its agreement with Wells
Fargo, and if so, whether the breach was excused.  

C.        Failure to
Comply with the Agreement

Under its first issue, Boss Hoss argues (1) Wells
Fargo did not plead that Boss Hoss breached the Dealer Agreement and instead
alleged that Chesshir breached the agreement; (2) the only breach Wells Fargo alleges
is that Boss Hoss violated the laws of the State of Texas, but the trial court
concluded that Missouri law governed this dispute, hence the duties alleged by
Wells Fargo are inapplicable; (3) delivery of the MSO to a buyer does not
constitute a breach of the Dealer Agreement because Wells Fargo was not
deprived of a means of perfecting a security interest in the motorcycle; and
(4) there “is no pleading or evidence” that Boss Hoss breached the Dealer
Agreement.

As to the first two of these arguments, Wells Fargo
pleaded that Boss Hoss breached the Dealer Agreement by failing to provide it
with evidence of lien perfection within 90 days as promised in the agreement. 
Wells Fargo further alleged that Boss Hoss breached the Guarantee Letter. 
Thus, Boss Hoss’s first two arguments are without merit.  Turning to the third
argument, it is immaterial whether the delivery of the MSO to Elic constituted
a breach of the Dealer Agreement; rather, the definitive issue is whether
sufficient evidence supports the jury’s verdict that Boss Hoss breached an
agreement with Wells Fargo.  We thus turn to Boss Hoss’s fourth argument under
this issue:  whether there is proof that Boss Hoss breached the Dealer
Agreement.

First, the question presented to the jury was not
limited to whether Boss Hoss breached the Dealer Agreement.  Rather, the
question presented to the jury was this:  “Did Boss Hoss Cycles of Houston,
L.L.C. fail to comply with its Agreement with Wells Fargo Bank, N.A.?”  The
term “Agreement” was not defined in the jury charge;[4] thus, it
could have applied to either the Dealer Agreement or the Guarantee Letter.  We
therefore consider whether there is legally sufficient evidence to support the
jury’s finding that Boss Hoss breached either the Dealer Agreement or the Guarantee
Letter.

To determine whether the evidence is legally
sufficient to support the judgment, we review the entire record, crediting
favorable evidence if reasonable jurors could and disregarding contrary
evidence unless reasonable jurors could not.  See City of Keller v. Wilson,
168 S.W.3d 802, 827 (Tex. 2005).  We assume that jurors decided questions of
credibility or conflicting evidence in favor of the verdict if they reasonably
could do so.   Id. at 819, 820.  We do not substitute our judgment for
that of the trier-of-fact if the evidence falls within this zone of reasonable
disagreement.   Id. at 822.  If the evidence would enable reasonable and
fair-minded people to differ in their conclusions, then it is legally
sufficient to support the verdict.  Id.

As detailed above, under the unambiguous terms of the
Dealer Agreement, Boss Hoss was required to provide evidence to Wells Fargo of
a perfected security interest in the property as collateral for any assigned
contracts.  If Boss Hoss breached the duties imposed by the Dealer Agreement,
Wells Fargo could require it to repurchase the contract.  Further, under the
similarly unambiguous terms of the Guarantee Letter, Wells Fargo could require
Boss Hoss to repurchase Elic’s loan contract if Wells Fargo did not receive a
“perfected title showing Wells Fargo as the lien holder within 90 days” of the
date of the letter.  It is undisputed that Wells Fargo did not receive a
perfected title showing it as the lien holder for the motorcycle that was the
subject of the Elic contract within either 90 days of the date of the contract
or 90 days of the date of the Guarantee Letter.[5] 
Indeed, both Chesshir and Walker testified that perfection of Wells Fargo’s
security interest in the motorcycle did not occur.  We thus conclude that there
is legally sufficient evidence to support the jury’s conclusion that Boss Hoss
did not comply with either the Dealer Agreement or the Guarantee Letter.  

D.        “Excuse” for
Failure to Comply with Agreement 

Next, in an abundance of caution, we consider whether
there is legally sufficient evidence to support the jury’s negative answer to
the question, “Was [Boss Hoss’s] failure to comply [with its agreement with
Wells Fargo] excused?”  Boss Hoss argues that it would have been impossible for
it to perfect Wells Fargo’s security interest under Missouri law because only a
lienholder or a licensed agent may create a lien on a motor vehicle under
Missouri law.  It contends that, because Chesshir testified it would have been
illegal for Boss Hoss to attempt to file a notice of lien to perfect Wells
Fargo’s security interest in Missouri, any requirement under the Dealer
Agreement that Boss Hoss do so must be excused.  See, e.g., Centex
Corp. v. Dalton, 840 S.W.2d 952, 954 (Tex. 1992) (discussing the defense of
supervening impossibility due to a change in law).[6]  

This argument is based on the faulty premise that
Boss Hoss was required, under the Dealer Agreement or the Guarantee Letter, to
perfect Wells Fargo’s security interest itself.  As discussed above, however,
neither of these agreements required Boss Hoss to perfect the security
interest.  Instead, both agreements required Boss Hoss to provide evidence to
Wells Fargo that its security interest in the motorcycle was perfected.  It is
undisputed that Boss Hoss failed to provide any evidence of a perfected
security interest in the motorcycle to Wells Fargo.  Further, instead of
providing the MSO to Wells Fargo so that it could perfect its own security
interest, Boss Hoss sent the MSO to Elic, who failed to title the motorcycle. 
We thus conclude that there is legally sufficient evidence to support the
jury’s finding that Boss Hoss’s failure to comply with its agreement(s) with
Wells Fargo was not excused.[7]


IV. 
Conclusion

First, Chesshir’s appeal is dismissed for want of
prosecution.  Second, we conclude that legally sufficient evidence supports the
jury’s finding that Boss Hoss failed to comply with its agreement(s) with Wells
Fargo and that its failure to do so was not excused.  We therefore overrule its
first issue.  Additionally, Boss Hoss has waived its second and third issues by
failing to adequately brief them, and they are overruled.  Finally, because
Boss Hoss has not established that the jury’s verdict was erroneous, it is not
entitled to attorneys’ fees.[8] 
We therefore overrule Boss Hoss’s fourth issue and affirm the trial court’s
judgment.

 

                                                                                                                

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson, Brown,
and Boyce. 









[1]
MSO stands for “Manufacturer’s Statement of Origin.”  According to Chesshir,
such a form is the first document in a chain of title.  The MSO comes from the
factory to the dealership and then later is transferred into a certificate of
title.





[2]
The jury charge contained no questions regarding conversion.





[3]
The jury also found $2,500 to be reasonable attorneys’ fees for prevailing on
an appeal to an intermediate court, $1,500 for responding to a petition for
review in the Supreme Court, and $1,500 for prevailing in the Supreme Court if
a petition for review were granted.





[4]
Boss Hoss neither objected to the jury charge nor complains of charge error on
appeal.





[5]
It is also undisputed that the amount owed on the loan at the time Elic
defaulted was $32,705.54; the Dealer Agreement explicitly provided that the
repurchase price would be the amount of the unpaid installment contract.  





[6]
Centex Corp. is the only case cited in the entirety of Boss Hoss’s
appellate brief.  





[7]
At trial, as detailed above, Chesshir indicated that Boss Hoss previously had
handled out-of-state sales in a similar manner as this one was handled without
any problems or complaints from Wells Fargo.  He also explained the actions he
took to protect Wells Fargo’s security interest in the bike.  He testified that
“title work” was provided to Wells Fargo in the form of a copy of the MSO. 
Finally, he stated that he believed the Dealer Agreement only applied to
transactions occurring in Texas.  But none of these arguments have been made on
appeal.  Thus, if any of these efforts would have “excused” Boss Hoss’s failure
to comply with its agreement(s) with Wells Fargo, they have been waived on
appeal.  





[8]
Under the terms of the contract, only the prevailing party in any legal
proceedings is entitled to recover attorneys’ fees and costs.  Further, the
Texas Civil Practice and Remedies Code provides for the award of attorneys’
fees only to a prevailing party in a breach of contract case.  See Tex. Civ. Prac. & Rem. Code Ann. §
38.001(8) (Vernon 2008).