

## NUMBER 13-08-00595-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

CORINE L. BRADSHAW, **Appellant,**

**v.**

DAVID BONILLA AND DAVID BONILLA, P.C., **Appellees.**

On appeal from the 319th District Court
of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Benavides**
**Memorandum Opinion by Justice Rodriguez**

Appellant Corine L. Bradshaw appeals a summary judgment granted in favor of appellees David Bonilla and David Bonilla, P.C. (collectively Bonilla) on her breach of fiduciary duty and fraud claims. By two issues, which we renumber as five, Bradshaw contends that the trial court erred in granting Bonilla's motion for summary judgment and

in denying her motion to continue the summary judgment proceeding. We affirm, in part, and reverse and remand, in part.

## I. BACKGROUND[1]

Kelly Bragg is Bradshaw's granddaughter. In 2002, Bragg hired Bonilla to represent her in legal matters involving the custody of her two children, who were then residing in Virginia with their father and Kelly's former husband, Jeffrey Bragg. For at least a two-year period, in addition to custody issues, Bonilla represented Bragg in criminal proceedings and in other matters involving numerous creditors and hot checks. During that time, Bradshaw, who was then in her late eighties and early nineties, issued checks to Bonilla totaling more than $700,000. According to Bradshaw, the monies were to be used for Bragg's legal representation in certain custody and criminal matters. Bonilla deposited Bradshaw's checks into his IOLTA account. During that same two-year period, Bonilla disbursed approximately $430,000 from his IOLTA account to Bragg or for Bragg's benefit.

Bradshaw sued Bonilla for breach of fiduciary duty and fraud.[2] She alleged that Bonilla had procured her money by fraud and failed to account for the money or return it to her. Bonilla filed a general denial and asserted, among other defenses, limitations and res judicata. Motions for summary judgment and responses were filed by both parties. *See* TEX. R. CIV. P. 166a(c), (i). Bradshaw filed a partial motion for summary judgment on her breach of fiduciary duty claim. Bonilla filed a combined traditional/no-evidence motion

---

[1]As this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[2]Although it is unclear from Bradshaw's petition, both parties' motions for summary judgment reference a breach of contract claim. Bradshaw, however, does not argue that the trial court erred in granting summary judgment on her contract claim, if any. Therefore, that matter is not before us in this appeal.

2

challenging proof of the elements of Bradshaw's claims and asserting that the evidence established his limitations and res judicata affirmative defenses. Bradshaw also filed a motion for continuance asking the trial court to allow her time to take Bonilla's deposition prior to the summary judgment hearing.

On July 24, 2008, the trial court heard all motions. After hearing arguments on the motion for continuance, the trial court denied the continuance in open court. On September 23, 2008, without stating the grounds for its ruling or upon which summary judgment motion it was granted, the trial court granted Bonilla's motion for traditional and no-evidence summary judgment. In the same order, the trial court denied Bradshaw's motion for partial summary judgment. This appeal ensued.

## II. STANDARDS OF REVIEW

The standard of review for the granting of a motion for summary judgment is determined by whether the motion was brought on no-evidence or traditional grounds. *See* TEX. R. CIV. P. 166a(c), (i); *Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 771 (Tex. App.–Corpus Christi 2003, no pet.) (op. on reh'g).

### A. No-Evidence Motion

Under rule 166a(i), the movant must allege that there is no evidence of a material element of the adverse party's claims. TEX. R. CIV. P. 166a(i); *see Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). While not required to marshal her proof, the non-movant must produce more than a scintilla of summary judgment evidence, thus, raising a genuine issue of material fact. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Grant*, 73 S.W.3d at 215. If the non-movant fails to produce more than

3

a scintilla of evidence under rule 166a(i), then there is no need to analyze whether appellee's summary judgment proof satisfies the less stringent rule 166a(c) burden. *Ridgway*, 135 S.W.3d at 600. If, however, the non-movant brings forward more than a scintilla of probative evidence, then a no-evidence summary judgment is not proper. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.–San Antonio 1998, pet. denied).

We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We "examine the entire record in the light most favorable to the non[-]movant, indulging every reasonable inference and resolving any doubts against the motion." *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam) (quoting *City of Keller*, 168 S.W.3d at 823).

### B. Traditional Motion

We review the trial court's granting of a traditional motion for summary judgment de novo, *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *Branton v. Wood*, 100 S.W.3d 645, 646 (Tex. App.–Corpus Christi 2003, no pet.), and consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) (citing *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam); *City of Keller*, 168 S.W.3d at 822-24); *Branton*, 100 S.W.3d at 646.

> A party moving for summary judgment must establish its right to summary judgment on the issues expressly presented to the trial court by conclusively

4

proving all elements of its cause of action or defense as a matter of law. The defendant as movant must disprove at least one of the essential elements of the plaintiff's causes of action to prevail on summary judgment. On appeal, the defendant still bears the burden of showing that there are no genuine fact issues and that it is entitled to judgment as a matter of law.

*Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999) (citations omitted); *see* TEX. R. CIV. P. 166a(b), (c). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller,* 168 S.W.3d at 816. The movant bears the burden of proof in a traditional motion for summary judgment, and we indulge every reasonable inference in favor of the non-movant and resolve all doubts about the existence of a genuine issue of material fact against the movant. *See Mayes*, 236 S.W.3d at 756 (citing *Sudan*, 199 S.W.3d at 292). Only when the movant has produced sufficient evidence to establish his right to summary judgment does the burden shift to the non-movant to come forward with competent controverting evidence raising a genuine issue of material fact. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *see Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

When, as here, a summary judgment does not specify the grounds on which it was granted, the appealing party must demonstrate that none of the movant's proposed grounds is sufficient to support the judgment. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). We will affirm the judgment if any one of the theories advanced in the motion for summary judgment and preserved for appellate review is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). Finally, when a party moves for summary judgment under both rules 166a(c) and 166a(i), as in this case, "[w]e

5

first review the trial court's summary judgment under the standards of [r]ule 166a(i)." *Ridgway*, 135 S.W.3d at 600.

## III. SUMMARY JUDGMENT

By her first four issues, Bradshaw generally claims that the trial court erred in granting Bonilla's motion for summary judgment. By issues one and two, Bradshaw urges that the evidence establishes her claims, and by issues three and four, she asserts that Bonilla's summary judgment evidence did not conclusively prove his affirmative defenses of limitations and res judicata.

### A. Breach of Fiduciary Duty Claim

By her first issue, Bradshaw contends that there is evidence to support each element of her breach of fiduciary duty claim. In response, Bonilla contends that summary judgment against Bradshaw was proper because there is no evidence that he had a fiduciary relationship with Bradshaw and, therefore, owed her no duty.

### 1. Applicable Law

In order to prevail on a breach of fiduciary duty claim, a plaintiff must prove: (1) the existence of a fiduciary relationship between the plaintiff and the defendant, (2) a breach by the defendant of his or her fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the breach. *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.–Houston [14th Dist.] 2008, pet. denied). A fiduciary relationship may arise as a matter of law in certain formal relationships, including attorney-client and trustee relationships. *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (per curiam); *Priddy v. Rawson*, 282 S.W.3d 588, 600 (Tex. App.–Houston [14th Dist.] 2009, pet. denied); *see*

6

*Lundy*, 260 S.W.3d at 501; *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 698 (Tex. App.–Fort Worth 2006, pet. denied).

Because not every relationship involving a high degree of trust and confidence rises to the stature of a formal fiduciary relationship, the law also recognizes the existence of an informal or confidential fiduciary relationship. *Meyer*, 167 S.W.3d at 330. An informal fiduciary relationship may arise from a moral, social, domestic, or purely personal relationship of trust and confidence. *Id.*; *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992); *Priddy*, 282 S.W.3d at 600; *Cotten*, 187 S.W.3d at 698. However, the moral, social, domestic, or personal relationship upon which the informal or confidential relationship is predicated "must exist prior to, and apart from the agreement made the basis of the suit." *Meyer*, 167 S.W.3d at 331 (quoting *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997)); *Priddy*, 282 S.W.3d at 600; *see Hubbard v. Shankle*, 138 S.W.3d 474, 483 (Tex. App.–Fort Worth 2004, pet. denied) ("In other words, there must be a preexisting special relationship of trust and confidence that is betrayed in later dealings."). A person is justified in placing confidence in the belief that another party will act in her best interest only where she is accustomed to being guided by the judgment or advice of the other party and there exists a long association in a business relationship as well as a personal friendship. *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App.–Houston [14th Dist.] 1997, pet. denied). In addition, mere subjective trust is insufficient to establish a confidential relationship that gives rise to a fiduciary duty. *Meyer*, 167 S.W.3d at 331. Finally, while the existence of an informal fiduciary relationship

7

"is ordinarily a question of fact, when the issue is one of no evidence, it becomes a question of law." *Crim Truck*, 823 S.W.2d at 594 (citing *Thigpen*, 363 S.W.2d at 253).

## 2. Motions, Responses, and Evidence

On February 26, 2008, Bradshaw filed a motion for partial summary judgment claiming that she proved, as a matter of law, each element of her breach of fiduciary duty claim. *See* TEX. R. CIV. P. 166a(c). In her motion, Bradshaw urged the following:

> [Bonilla] owed [her] a fiduciary duty to account for monies received from her and to expend them only for the benefit of her granddaughter in pending litigation or criminal matters. [She] had a fiduciary relationship with [Bonilla] by [his] accepting her monies in trust and as evidenced by letters attached to [her] affidavit. [Bonilla] had a duty to return said monies to [her].

In support of her motion, Bradshaw attached the following: (1) her affidavit, in which she identified a number of checks she issued to Bonilla for the representation of Bragg in a custody case and in certain criminal matters; and (2) letters from Bonilla to Bradshaw, dated between April 19, 2002, and April 12, 2004.[3]

In his response to Bradshaw's motion for partial summary judgment, Bonilla asserted that the evidence showed he had neither a formal attorney-client relationship nor an informal fiduciary relationship with Bradshaw. In addition, Bonilla incorporated arguments made in his traditional/no-evidence motion for summary judgment. Relevant to our analysis is the portion of his no-evidence motion where he urged that Bradshaw had

---

[3]Bonilla's letters included (1) three acknowledging receipt of a number of Bradshaw's checks; (2) one requesting a $30,000 check from Bradshaw and suggesting that the check would be used as a cash bond to secure a visit by Bragg's children to Corpus Christi; (3) one estimating attorney's fees in the amount of $30,000 to $40,000 for the cost of litigation concerning the visitation of the children; (4) one regarding the dismissal of Bragg's criminal case involving Bradshaw; (5) one informing Bradshaw of (a) Bonilla's referral of Bragg to a counselor for her spending addiction and the payment for the visits through his office and (b) the pending sale of a BMW purchased by Bragg and the return of the money to Bradshaw; and (6) one informing Bradshaw of the sale of the BMW, advising her that if she needed assistance paying taxes to notify Bonilla so that he could forward a check to assist her, and, per her instructions, placing the proceeds of the sale of the BMW into Bonilla's IOLTA Trust Account.

no evidence that she had standing to claim breach of fiduciary duty through either a formal or an informal relationship.

In Bradshaw's response to Bonilla's combined motion, she continued to maintain that material fact issues remained as to her breach of fiduciary duty claim because there was summary judgment evidence to show that she "acted in a trusting and confidential relationship with [Bonilla], and that [she] trusted that [Bonilla] would use the delivered monies as promised." In her response, Bradshaw made the following argument:

> [Bonilla] received and accepted monies from [Bradshaw] and made written representations as to the use of said monies. There was no formal agency or escrow agreement; none is required. The letters sent by [Bonilla] and received by [Bradshaw] clearly state that an agreement existed between the parties as to the use of the transferred funds. [Bradshaw] trusted [Bonilla]. The parties were not equals. One was a 90 year old woman; the attorney, an attorney with almost 30 years of experience. Because he was an attorney and accepted the monies and deposited them into his IOLTA account with the understanding as represented in writing to [Bradshaw], and because of the unequal nature and mindset of the parties, [Bonilla] was under a duty to use the funds as directed or instructed by [Bradshaw, or to advise [Bradshaw] of the same. [Citations to authority omitted.]

Bradshaw supported her responsive arguments with the following: (1) her affidavit[4] and its attachments, which included copies of twelve personal checks and six cashier's checks totaling over $700,000, all made payable to Bonilla; (2) correspondence from Bonilla including a September 17, 2004 letter, in which he identified checks that he had

---

[4]In her attached affidavit, Bradshaw (1) repeated statements found in her earlier-filed affidavit; (2) explained that the monies she provided to Bonilla were from personal funds and not from a trust fund as Bragg claimed; (3) added that she "trusted Mr. Bonilla . . . [to] handle the monies [she] gave him as indicated in his letters and for the purposes indicated in the letters and on the checks;" (4) stated that she did "not recall [Bragg] sharing this list [of checks] with [her] in September of 2004;" and (5) averred that after she read Bragg's October 16, 2006 affidavit filed in support of Bonilla's combined motion for summary judgment, she learned (a) that monies had been disbursed to Bragg directly; (b) that they were not used for attorney's fees in obtaining visitation with [her great-]grandchildren or for a bond; and (c) that Bragg allegedly made expensive jewelry purchases, paid her boyfriend's ad valorem taxes, and made many other "foolish" expenditures with these monies. Bradshaw affied that she authorized none of these disbursements.

9

issued from his IOLTA account through August 20, 2004, to or on behalf of Bragg in the amount of approximately $430,000; and (3) the affidavit of Jeffrey Bragg explaining that he had no discussions with Bonilla about a bond and that there was no visitation agreement.[5]

### 3. Fiduciary Relationship Element

On appeal, as to this first element of a breach of fiduciary duty claim, Bradshaw presents no argument regarding the existence of any formal fiduciary relationship between herself and Bonilla, and we find no evidence demonstrating the existence of a formal relationship upon which to base a fiduciary duty.[6]   Rather, Bradshaw argues that an

[5]Jeffrey Bragg set out the following in his affidavit: (1) on one occasion, a man who identified himself as Mr. Bonilla, called him regarding visitation of his sons with Bradshaw, and he asked the man why he was calling him and not Kelly; (2)  on a second occasion, a party talked to this man on Jeffrey Bragg's behalf and made it very "clear to him that under no circumstances would [his sons] be leaving the State of Virginia, and any visitation, . . . in Virginia, would have to be made around their school and summer schedules as well as [his] own"; (3) "[a] bond securing the return of [his sons] from their visitation with Kelly Bragg and/or Corine Bradshaw was never mentioned nor [sic] discussed"; (4) there were no visitation agreements with Kelly Bragg after Jeffrey Bragg became the custodial parent of their sons and he never agreed they could visit Texas; and (5) he has heard nothing from anyone claiming to represent his ex-wife since the above-referenced phone conversations, and the last time Kelly visited the boys was in February 2001.

[6]Bonilla suggests that Bradshaw is asserting, on appeal, that a formal fiduciary relationship existed because Bonilla acted as her escrow agent.  We do not construe her argument as such.  Nonetheless, even were we to agree that this contention has been made, an escrow agent relationship is based on a written agreement that sets out the duties owed, and there is no evidence in the record of a written agreement appointing Bonilla as Bradshaw's escrow agent.  *See, e.g., Jones v. Blume*, 196 S.W.3d 440, 448 (Tex. App.–Dallas 2006, pet. denied) ("An escrow agent must be appointed through a specific legal document that imparts a specific legal obligation."); *Chapman Children's Trust v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 438 (Tex. App.–Houston [14th Dist.] 2000, pet. denied) (affirming a summary judgment in favor of an attorney who was alleged to have been an escrow agent with respect to settlement funds and concluding that absent a written agreement, a lawyer has no duty to act as an escrow agent).  Bradshaw asserts that the letters sent to her by Bonilla clearly state that an agreement existed between the parties as to the use of the transferred funds.  We cannot conclude, however, that the letters evidence a specific legal document appointing Bonilla escrow agent of the monies, such that Bradshaw has met her burden as a matter of law as movant in her motion for partial summary judgment.  *See Jones*, 196 S.W.3d at 448; *see also* TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).  Neither can we conclude that Bradshaw met her burden in response to Bonilla's no-evidence motion for summary judgment.  Through her summary judgment evidence, Bradshaw failed to produce more than a scintilla of probative evidence to raise a genuine issue of material fact regarding whether a duty existed based on a formal fiduciary relationship.  *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

informal fiduciary relationship existed because she trusted and relied on Bonilla to use her funds as directed. Our review of the evidence, however, indicates otherwise.

There is no evidence that Bradshaw had a reason to place a high degree of trust in Bonilla before she began sending him money for Bragg's expenses and fees. *See Meyer*, 167 S.W.3d at 330. There is no evidence that Bradshaw was accustomed to being guided by the judgment or advice of Bonilla or that there existed a long association in a business relationship or a personal friendship. *See Hoggett*, 971 S.W.2d at 488. There is no evidence of a pre-existing special relationship that was betrayed in later dealings. *Hubbard*, 138 S.W.3d at 483.

To support her claim of an informal or confidential relationship, Bradshaw relies only on the letters, which she describes as an agreement, and on Bonilla's conduct in disbursing funds allegedly for undesignated purposes. However, this is not evidence of a prior special relationship that would justify the imposition of a fiduciary duty on Bonilla. *See Meyer*, 167 S.W.3d at 331. The agreement, if any, and Bonilla's conduct do not represent prior dealings between Bonilla and Bradshaw. Rather, they form the basis of the present lawsuit. And, the fact that Bradshaw stated she trusted Bonilla is not, in and of itself, enough to establish an informal or confidential fiduciary relationship. *See id*.

Therefore, after examining the entire record in the light most favorable to Bradshaw, indulging every reasonable inference and resolving any doubts against the motion, *see Sudan*, 199 S.W.3d at 292, and after reviewing the summary judgment record for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions, *see Hamilton*, 249 S.W.3d at 426, we conclude, as to Bonilla's no-evidence motion for

11

summary judgment, that Bradshaw has failed to produce more than a scintilla of evidence raising a genuine issue of material fact regarding the existence of a fiduciary duty owed her by Bonilla. *See Ridgway*, 135 S.W.3d at 600. Likewise, we conclude that Bradshaw did not establish her right to summary judgment as movant in her motion for partial summary judgment because she did not conclusively prove the fiduciary duty relationship element of her cause of action as a matter of law. *See* TEX. R. CIV. P. 166a(b), (c); *Diaz*, 9 S.W.3d at 803. Therefore, the trial court did not err in granting Bonilla's motion for no-evidence summary judgment and denying Bradshaw's motion for partial summary judgment on her breach of fiduciary duty claim.

Having concluded that Bradshaw did not meet her burden on Bonilla's no-evidence motion, there is no need to analyze whether Bonilla's summary judgment proof satisfies the less stringent rule 166a(c) burden on Bradshaw's fiduciary duty claim. *Ridgway*, 135 S.W.3d at 600; *see* TEX. R. APP. P. 47.1. And because this analysis is dispositive of this issue, we need not address Bonilla's affirmative defenses as they apply to this claim. *See* TEX. R. APP. P. 47.1. We overrule Bradshaw's first issue.

## B. Fraud Claim

By her second issue, Bradshaw alleges that the evidence supports her fraud claim. Bonilla contends that, as a matter of law, there is no evidence of fraud on his part.

### 1. Applicable Law

In Texas, it has long been established that a lawyer may be liable if he knowingly commits a fraudulent act that injures a third person.[7] *See, e.g., Chu v. Chong Hui Hong*,

---

[7]A lawyer may also be "liable . . . if he knowingly enters into a conspiracy to defraud a third person." *Mendoza v. Fleming*, 41 S.W.3d 781, 787 (Tex. App.–Corpus Christi 2001, no pet.). In addition, through her briefing, Bradshaw suggests that Bonilla may be liable as a party-in-interest for the fraudulent

12

249 S.W.3d 441, 446 (Tex. 2008) ("An attorney who personally steals goods or tells lies on a client's behalf may be liable for conversion or fraud in some cases.") (citing *Estate of Stonecipher v. Estate of Butts*, 686 S.W.2d 101, 103 (Tex. 1985) (per curiam); *Poole v. Houston & T.C. Ry. Co.*, 58 Tex. 134, 137-38 (1882) (explaining that where an attorney acting on behalf of his client participates in fraudulent activities, his conduct is "foreign to the duties of an attorney")); *Likover v. Sunflower Terrace II, Ltd.*, 696 S.W.2d 468, 472 (Tex. App.–Houston [1st Dist.] 1985, no writ); *Querner v. Rindfuss*, 966 S.W.2d 661, 666, 670 & n.1 (Tex. App.–San Antonio 1998, writ denied); *cf. McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794 (Tex. 1999) (noting that fraud actions cannot be brought against an opposing attorney in litigation as reliance in those circumstances is unreasonable). To establish a claim for fraud in this case, Bradshaw must establish that (1) Bonilla made a material representation knowing the representation was false or recklessly as a positive assertion without any knowledge of its truth with the intention to induce Bradshaw to act upon it; (2) Bradshaw actually and justifiably relied upon the representation; and (3) Bradshaw suffered injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001); *Bradford v. Vento*, 48 S.W.3d 749, 754-55 (Tex. 2001).

---

misrepresentations of Bragg by mere silent acquiescence when he benefitted from the fraud. *See In re Arthur Andersen L.L.P.*, 121 S.W.3d 471, 481 (Tex. App.–Houston [14th Dist.] 2003, orig. proceeding) (citing *Bransom v. Standard Hardware, Inc.*, 874 S.W.2d 919, 924 (Tex. App.–Fort Worth 1994, writ denied); *Corpus Christi Teachers Credit Union v. Hernandez*, 814 S.W.2d 195, 202 (Tex. App.–San Antonio 1991, no writ)). However, at the time of the summary judgment proceeding, Bradshaw's pleadings asserted only that Bonilla had committed direct fraudulent acts that caused her injury, not that he conspired with Bragg to defraud Bradshaw or that he was a party-in-interest who benefitted from Bragg's allegedly fraudulent actions through his silent acquiescence. Therefore, these proposed theories of recovery were not presented to the trial court and will not be considered in this appeal. *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.")

13

## 2. Motions, Responses, and Evidence

Bonilla filed a motion for traditional and no-evidence summary judgment on Bradshaw's fraud claim. In his no-evidence argument, Bonilla asserted that Bradshaw had no evidence, even after an adequate time for discovery, to support each of the essential elements of her fraud claim, arguing that there was no evidence that he made a material representation knowing it was false and intending to induce Bradshaw to act or that there was justifiable reliance by Bradshaw and injury to her. *Ernst & Young*, 51 S.W.3d at 577.

In the traditional language of his motion, Bonilla generally argued that Bradshaw's fraud claim failed because the summary judgment evidence conclusively established that the claim was meritless, that no genuine issue of material fact existed—i.e., that the evidence conclusively negated her claim. In support of his motion, Bonilla attached his affidavit, the affidavit of Kelly Bragg, excerpts from Bradshaw's deposition testimony, and copies of miscellaneous letters regarding matters related to Bragg's representation.

Bradshaw responded to Bonilla's combined motion asserting that material fact issues remained and supported her response with evidence detailed above in section III. A. 2. As to her fraud claim, Bradshaw asserted that there were fact issues regarding Bonilla's request for money for (1) a cash bond to secure visitation with her great-grandchildren, (2) child support that allegedly did not exist, and (3) other payments related to her great-grandchildren.

## 3. Fraud Elements

Bradshaw's supporting evidence filed in response to Bonilla's motion established that through written correspondence, Bonilla acknowledged receipt of a number of Bradshaw's checks, requested a $30,000 check from Bradshaw, and suggested that the

14

check would be used in the future as a cash bond to secure a visit by Bragg's children to Corpus Christi. Bonilla also informed Bradshaw that he estimated attorney's fees in the amount of $30,000 to $40,000 for the cost of litigation concerning the visitation of her great-grandchildren. Bradshaw's affidavit identified a number of checks that she issued to Bonilla for his representation of Bragg in certain custody and criminal matters. Asserting in her response that there were fact issues regarding Bonilla's request for money for the cash bond and for child support that allegedly did not exist and for other payments related to her great-grandchildren, Bradshaw's evidence reveals a discrepancy in the amount of money provided by Bradshaw to Bonilla—more than $700,000—and the monies disbursed by Bonilla either for or to Bragg—approximately $430,000. Bradshaw averred that she did not authorize the disbursement of monies to Bragg directly, some of which, according to Bradshaw's affidavit, were used to purchase expensive jewelry and to pay Bragg's boyfriend's ad valorem taxes. Bradshaw stated in her affidavit that she learned that the monies were not used for attorney's fees in obtaining visitation with her great-grandchildren or for a bond. Jeffrey Bragg's affidavit, also filed in support of Bradshaw's response, established that Bonilla never mentioned or discussed a bond with him and that it was very unlikely that any visitation of his sons with Bradshaw would be arranged because, as set out in his affidavit, "under no circumstances would [his sons] be leaving the State of Virginia, and any visitation, . . . in Virginia, would have to be made around their school and summer schedules as well as [his] own."

Based on our examination of the entire record in the light most favorable to Bradshaw, indulging every reasonable inference and resolving any doubts against Bonilla's motion, *see Sudan*, 199 S.W.3d at 292, and reviewing the no-evidence summary judgment

15

for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions, *see Hamilton*, 249 S.W.3d at 426, we conclude that Bradshaw presented more than a scintilla of probative evidence to raise a genuine issue of material fact as to each element of fraud. *See Ernst & Young*, 51 S.W.3d at 577. Thus, the trial court improperly granted summary judgment if it did so on the grounds asserted in Bonilla's no-evidence motion as to Bradshaw's fraud claim. *See Moore*, 981 S.W.2d at 269.

Before shifting the burden to Bradshaw to come forward with competent controverting evidence raising a genuine issue of material fact with regard to any fraud elements challenged by Bonilla, *see Steel*, 997 S.W.2d at 223, we next turn to the arguments and evidence presented in Bonilla's traditional motion for summary judgment to determine whether he conclusively established his right to judgment as a matter of law by negating at least one essential element of Bradshaw's fraud cause of action, thus, satisfying his rule 166a(c) burden. *Ridgway*, 135 S.W.3d at 600; *see* TEX. R. CIV. P. 166a(c). Using language appropriate to a traditional summary judgment motion, Bonilla specifically asserted only the following: "the evidence conclusively establishes that Bonilla (1) never spoke to Ms. Bradshaw, (2) was never present when Kelly was asking her grandmother for money, (3) and never dealt personally with Ms. Bradshaw." In his motion, Bonilla urged that he met his burden and "is entitled to summary judgment as a matter of law, by disproving by clear and convincing evidence, at least one essential element . . . [of] fraud." Bonilla appears to be arguing that he disproved the misrepresentation element because he allegedly had no personal interaction or contact with Bradshaw regarding the matters at issue in this case. However, even assuming that the evidence Bonilla attached to his motion established such facts, we cannot conclude that Bonilla has negated this

16

element of Bradshaw's fraud claim. Bonilla provides us with no authority, and we find none, that supports his argument that representations upon which a fraud claim is based must be made through personal conversations, presence, or contact. In his traditional motion for summary judgment, Bonilla challenges no other element of fraud.[8] Thus, we conclude that Bonilla's evidence failed to conclusively establish his right to judgment as a matter of law by negating the misrepresentation element of Bradshaw's fraud cause of action. Accordingly, we also conclude that the trial court improperly granted traditional summary judgment in Bonilla's favor on Bradshaw's fraud claim, if it did so on this basis. We sustain Bradshaw's second issue.

### 4. Affirmative Defenses

Because we will also affirm a summary judgment based on a defendant's traditional motion if the record establishes that the defendant has conclusively established each element of the affirmative defense as a matter of law, we now determine whether summary judgment was proper as to Bradshaw's fraud claim based on Bonilla's affirmative defenses of limitations or res judicata. *See* TEX. R. CIV. P. 166a(b), (c); *Diaz*, 9 S.W.3d at 803.

### a. Statute of Limitations

By her third issue, Bradshaw contends that the trial court erred in granting summary judgment on the basis of limitations because her claims are subject to the discovery rule.

---

[8]Bonilla presents appellate arguments challenging other elements of Bradshaw's fraud claim. The purpose, however, of requiring that a motion for summary judgment state its specific grounds is to give fair notice to the opponent and define the issues, and for that reason, a defendant-movant is not entitled to summary judgment on a ground or defense not asserted in his motion, even where the summary judgment proof might conclusively establish his right to judgment on that ground. *See Sledge v. Mullin*, 927 S.W.2d 89, 95 (Tex. App.–Fort Worth 1996, no writ) (citations omitted). Here, we have addressed the grounds expressly stated in Bonilla's motion and conclude that he has failed to conclusively establish his entitlement to judgment as a matter of law by negating at least one essential element of Bradshaw's fraud claim. *See Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999) (citations omitted).

17

On appeal, each party argues that the other had the burden to establish, as a matter of law, when Bradshaw discovered or should have discovered the nature of the injury and did not do so.

The checks at issue in this case were made payable by Bradshaw to Bonilla between March 26, 2002 and August 25, 2003, and on August 17, 2004. Except for one check, all complaints involve checks written prior to September 4, 2003.[9] Bradshaw filed her lawsuit against Bonilla on September 7, 2007.

In his motion for summary judgment and in his response to Bradshaw's partial motion for summary judgment, Bonilla asserted that Bradshaw's claims were barred by limitations because the actions related to her claims took place more than four years before suit was brought. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(5) (Vernon 2002) (providing for a four-year limitations period for a breach of fiduciary duty action); Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4) (Vernon 2002) (setting out that the statute of limitations for fraud is four years); *Willis v. Donnelly*, 199 S.W.3d 262, 278 n.33 (Tex. 2006) (providing that the statute of limitations for breach of fiduciary duty is four years); *see Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 39 Tex. Sup. Ct. J. 467, 2009 Tex. LEXIS 113, at *22 (Tex. Mar. 27, 2009) (explaining that "[t]he [four-year] statute of limitations for fraud begins to run from the time the party knew of the misrepresentation"). In response to Bonilla's limitations defense, although not pleaded in her petition, Bradshaw asserted the discovery rule. Bonilla did not address the discovery rule after Bradshaw raised it in her response.

---

[9]The noted exception is a check dated August 17, 2004, issued by Bradshaw to Bonilla for $22,000.

18

When moving for summary judgment on the affirmative defense of limitations, the movant must conclusively establish that defense by (1) conclusively proving the date the cause of action accrued, and (2) "negat[ing] the applicability of the discovery rule if it applies and has been pleaded *or otherwise raised*, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury." *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999) (emphasis added); *Envtl. Procedures, Inc. v. Guidry*, 282 S.W.3d 602, 622 (Tex. App.–Houston [14th Dist.] 2009, pet. denied) (op. on rehr'g). It is undisputed that the discovery rule applies to Bradshaw's fraud claims. *See Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) (providing that the "discovery rule" applies in cases of fraud and fraudulent concealment).

Relying on *Via Net v. TIG Ins. Co.,* Bonilla asserts that because Bradshaw did not amend her petition to include the discovery rule and only raised it in her summary judgment response, and because the issue was then tried by consent, the burden switched to Bradshaw to prove when she discovered or should have discovered the nature of the injury. 211 S.W.3d 310, 313 (Tex. 2006) (per curiam). We disagree.

*Via Net* is silent on this proposition. Rather, in *Via Net,* the supreme court explained that "[w]hen [appellee] Safety Lights asserted the discovery rule for the first time in its summary judgment response, Via Net had two choices: it could object that the discovery rule had not been pleaded, or it could respond on the merits and try the issue by consent." *Id.* Because it chose to respond on the merits and complained, in part, of the applicability of the discovery rule, the rule's "applicability was placed squarely before the trial and

19

appellate courts." *Id*. (citing TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, *answer* or *other response*, shall not be considered on appeal as grounds for reversal.") (emphasis added by supreme court)). Having determined that the discovery rule applicability issue was properly raised as a basis for the summary judgment and tried by consent, the supreme court overruled the court of appeal's determination that the issue was not raised. The supreme court then addressed "whether the discovery rule applie[d] to contract claims like the one asserted" in that case and concluded that the discovery rule did not apply. *Id.* at 313-15.

Under the facts of its breach-of-contract case, the *Via Net* court determined only that Via Net raised the issue of applicability in its response to Safety Lights's discovery rule claim and that the discovery rule did not apply; it did not conclude or imply, in any way, that the burden of proof shifted to the non-movant in that case. *Id*. In fact, by its analysis, the supreme court implied that, if no objection is made, the burden remains on the movant to respond on the merits and prove, as a matter of law, when the plaintiff discovered or should have discovered the nature of the injury. Bonilla's reliance on *Via Net* therefore is misplaced. Based on the summary judgment law as set out in *KPMG Peat Marwick,* because Bradshaw "otherwise raised" the discovery rule in her response, Bonilla had the burden to conclusively negate the applicability of the discovery rule by proving as a matter of law that there is no genuine issue of material fact about when Bradshaw discovered, or in the exercise of reasonable diligence should have discovered the nature of her injury. *See* 988 S.W.2d at 748; *Proctor v. White*, 172 S.W.3d 649, 651-652 (Tex. App.–Eastland 2005, no pet.).

20

At oral argument, Bonilla's counsel conceded that if the burden did not shift and Bonilla retained the burden to negate the discovery rule, he did not do so. Accordingly, we sustain Bradshaw's third issue and conclude that the trial court erred in granting Bonilla summary judgment on Bradshaw's fraud claim if it did so on this basis.

### b. Res Judicata

By her fourth issue, Bradshaw contends that her fraud claim is not barred by res judicata. She asserts that Bonilla did not prove as a matter of law (1) that he was in privity with Bragg in the 2005 suit discussed below or (2) that the present suit is based on the same claims that were raised or could have been raised in the 2005 suit.

As the summary judgment movant, it was Bonilla's burden to conclusively prove his affirmative defense of res judicata. *See Dardari v. Tex. Commerce Bank Nat'l Ass'n*, 961 S.W.2d 466, 470 (Tex. App.–Houston [1st Dist.] 1997, no pet.).

> Res judicata is an affirmative defense that may support a summary judgment if the movant conclusively proves all the elements necessary to support the defense. *Fernandez v. Memorial Healthcare Sys., Inc.*, 896 S.W.2d 227, 230 (Tex. App.–Houston [1st Dist.] 1995, writ denied). Res judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). Res judicata requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

*Id*.

In the background section of his motion, Bonilla discussed a 2005 lawsuit brought by Bradshaw against Bragg. He attached the petition and judgment from that case as

exhibits to his summary judgment motion.[10]  As set out in the petition, Bradshaw alleged that Bragg coerced her into issuing certain checks from an account at Navy Army Federal Credit Union (NAFCU) and misrepresented to her that the checks were to be directly deposited into Bragg's dentist's account as payment for Bragg's needed and excessive dental work.  Bradshaw sought a permanent injunction against Bragg to protect her from a pattern of "exploitation and coercion" by restraining Bragg from, among other things, "[c]ontacting [Bradshaw] in any manner" and "taking and/or accepting any checks, cash or other property from . . . Bradshaw."  The lawsuit sought damages of an unknown amount in excess of $24,000.  As a result of the 2005 lawsuit, an agreed judgment was entered permanently enjoining Bragg from, among other things, contacting Bradshaw and taking, from Bradshaw, checks, cash, or other property, including funds from any account at NAFCU.

After describing the 2005 lawsuit in his motion, Bonilla summarily applied res judicata to Bradshaw's fraud claims as follows:

> Bradshaw sued . . . Bragg in 2005 and alleged the same pattern of facts (exploitation; obtaining checks and money under false pretenses) and received a [f]inal [j]udgment.  Bradshaw also recognizes that her granddaughter has spent or given away all the money she received.  So [Bradshaw] now seeks to recover damages from Bonilla, as any further claims for damages against Kelly Bragg would be barred by res judicata.

Based on our review of the record, we conclude that Bonilla did not conclusively prove that his res judicata defense defeated Bradshaw's fraud claim.  *See id*.  The record does not establish that Bonilla conclusively established each element of this affirmative defense as a matter of law, specifically the third element—that Bradshaw's suit against Bonilla was based on the same claims as were raised or could have been raised in the first

---

[10]We note that Bonilla was Bragg's legal counsel in this 2005 lawsuit.

22

action. *See* TEX. R. CIV. P. 166a(b), (c); *Amstadt*, 919 S.W.2d at 652. Although Bonilla claimed that the same *pattern* of facts was alleged in the 2005 suit, he neither alleged nor established that the second suit was based on the same claims as were raised or could have been raised in the first action. Therefore, although the summary judgment was granted generally in this case, we cannot affirm the judgment based on res judicata. We sustain Bradshaw's fourth issue.

## IV. MOTION FOR CONTINUANCE

By her fifth issue, Bradshaw contends that the trial court erred in denying her motion for continuance. She argues that "the deposition of Bonilla was needed in that Bonilla had taken inconsistent positions in his Affidavits, indicating an admission of one or more of the elements of fraud would be obtained in said deposition." Having sustained all issues related to her fraud claim, we need not consider this final issue because it is not "necessary to the final disposition of the appeal." TEX. R. APP. P. 47.1.

## V. CONCLUSION

We affirm the judgment of the trial court on Bradshaw's breach of fiduciary duty claim, and we reverse the judgment on her fraud claim and remand for proceedings consistent with this opinion.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 28th
day of January, 2010.

23